43 N.J. Super. 460 (1957)
129 A.2d 51
BART MINARDI, PETITIONER-APPELLANT,
v.
PACIFIC AIRMOTIVE CORP., RESPONDENT-RESPONDENT. Civil Action
Superior Court of New Jersey, Union County Court, Law Division.
Decided January 29, 1957.
*461 Mr. William D. Mungle, attorney for petitioner-appellant.
Mr. Isidor Kalisch, attorney for respondent-respondent.
FELLER, J.C.C.
This is a workmen's compensation appeal. The petition was dismissed in the bureau and the petitioner appeals.
Deputy Director Medinets determined that the petitioner failed to give notice to the respondent within 48 hours of the occurrence of the hernia, as provided by N.J.S.A. 34:15-12(x).
The transcript reveals that the petitioner testified that on May 7, 1954, while in the employ of the respondent, he was lifting crates on a truck and felt a sharp pain in his right side; that he rested for 15 minutes and that he thought it was "a gas pain or something," and continued working for the rest of the day; that he did not notify his employer of *462 the incident and he continued to work until May 19, 1954, when he was laid off; that he was not aware of the fact that he had a hernia until he applied for employment at American Airlines and was given a physical examination on May 28, 1954; that he notified the Pacific Airmotive Corporation on the same day (May 28, 1954). The petitioner further testified that he was operated on at the Wyckoff Heights Hospital in Brooklyn; and the hospital bills amounting to $177.44, the bill of Dr. Iamele amounting to $200, and the bill of Dr. Miller for anesthesia amounting to $25 were marked in evidence as Exhibit P-1. Petitioner stated that he lost eight weeks from work.
On cross-examination the petitioner admitted that he has no present complaints and the hernia has been corrected. No medical testimony was produced, it being stipulated that there was no claim for permanent disability.
At the conclusion of the petitioner's case, the respondent moved for dismissal of the petition on the ground that the petitioner failed to conform with the provisions of N.J.S.A. 34:15-12(x) by failing to give the required notice. The deputy director found as a fact that the petitioner failed to give the notice within the time required by statute and dismissed the petition.
In his opinion at the conclusion of the hearing in the bureau the deputy director stated as follows:
"I wish it were within my province to hold to the contrary because I have a very strong personal conviction on that problem. But I must interpret the statute as it is. I wish there would be an appeal. I don't think I very often recommend appeals in these cases, but there are times when it is important to us for the operation of the statute to have a clarification thereof by an upper tribunal. I think this is one type of case that should be passed upon by the upper courts for our guidance, for the guidance of counsel in these cases."
The primary issue is whether under the statute a traumatic hernia should be reported within 48 hours after the incident producing the same, as the respondent contends, or within 48 hours of the time the employee became aware *463 of the fact that he was suffering from a hernia, as the petitioner contends.
N.J.S.A. 34:15-12(x) provides as follows:
"Where there is a traumatic hernia compensation will be allowed if notice thereof is given by the claimant to the employer within forty-eight hours after the occurrence of the hernia but any Sunday, Saturday or holiday shall be excluded from this forty-eight hour period."
In the case of Panchak v. Simmons Co., 15 N.J. 13, 20, 21 (1954), Justice Jacobs stated that the former Supreme Court, 13 N.J. 362 indicated its strong leaning towards the position urged by the plaintiff, George Panchak, to the effect that the notice period should not begin to run until a compensable injury is manifested, but that the said court expressly left that issue undetermined and the Court of Errors and Appeals had no occasion to and did not in anywise deal with it. He further stated that the court considered it open for original disposition without any controlling precedent within this State.
In 2 Larson, Workmen's Compensation Law (1952), pp. 251 et seq., cited with approval in Panchak v. Simmons Co., supra, this subject was covered very extensively. It pointed out that since the law does not exact the impossible of the employee, lateness of both notice and claim may be excused for various reasons, including the following: impossibility of knowing that an apparently minor accident would later develop into a compensable injury, and reasonable inability to recognize a disease or disability condition in an early or latent stage. Some statutes, however, by making the claim period run from the date of the "accident," have produced holdings that an injury which manifests itself for the first time after the period has expired, is nevertheless barred. If the statute bars claims filed after the date of the "accident," the workman can never collect for his injuries, no matter how diligent he is.
Dean Larson further states that the kind of specific concessions which appears in the Wisconsin statute, dating the *464 limitations period from the date employee knew or ought to have known the nature of the disability and its relation to the employment is exceptional. That the usual statute merely dates the period from the time of injury or disability, saying nothing about the time of discovery of the nature of the condition; and that the great majority of the courts have been sufficiently impressed with the acute unfairness of a literal application of this language to read in an implied condition suspending the running of the statute until by reasonable care and diligence it is discoverable and apparent that a compensable injury has been sustained.
It is further pointed out that 22 states date the claim period from the "accident"; most of the rest date it from the "injury." Under the "injury" type of statute there is now almost complete judicial agreement that the claim period runs from the time the compensable injury becomes apparent. 2 Larson Workmen's Compensation, supra.
In Panchak v. Simmons Co., supra, a number of decisions in other states have also been cited with approval. In Clausen v. Minnesota Steel Co., 186 Minn. 80, 242 N.W. 397, 398 (1932), the Minnesota Supreme Court dealt with similar statutory provisions. Clausen, an employee of the Minnesota Steel Co., had received a blow on the knuckle of the forefinger of his right hand. He continued working and when he went home he bathed his hand in hot water. Although a certain soreness remained, he considered the matter trivial, continued his work and made no report of the incident. Several months later his finger pained him and he consulted a doctor. X-rays were then taken, disclosing osteomyelitis of the metacarpal bone of the finger. Immediately thereafter he notified his employer, but compensation was refused on the ground that notice had not been given within the 90-day statutory period. The court, in rejecting this ground, pointed out that it could hardly have been the legislative intent that the employee give notice of "every slight accident, scratch, pinprick, or blow suffered in his work." In the course of its opinion, it said:
*465 "It is common knowledge that accidents may injure some parts of the physical structure of the body not open to view nor suspected of having received an injury, nor causing disability until long after the accident. The injury is there, but latent and hidden. There are accidents so trivial in apparent results at the time that neither the one who might witness the same nor the victim thereof would anticipate disability therefrom; yet the subsequent development thereof may cause not only loss of members but life itself. Examples of such appear in the decisions of this court. Walker v. Minnesota Steel Co., 167 Minn. 475, 209 N.W. 635; Hertz v. Watab Paper Co., 180 Minn. 177, 230 N.W. 481; Keane v. Arrowhead Steel Products Co., 181 Minn. 359, 232 N.W. 621. The Workmen's Compensation Act does not contemplate the payment of damages for accidental injuries no matter how painful. It is only the disability or loss of earning power which results from the injuries that calls for compensation. So when the act speaks of the occurrence of injury it refers to compensable injuries, and these occur when disability appears." (Italics supplied.)
It also refers to the case of Hines v. Norwalk Lock Co., 100 Conn. 533, 124 A. 17, 19 (Sup. Ct. Err. 1924). There the petitioner suffered a double hernia which resulted from lifting a box, but he continued with his work, and the Supreme Court of Errors of Connecticut held that an award was not barred by the employee's failure to notify the employer of his original strain within the statutory period, saying:
"Since there can be no compensation unless there be incapacity, there would seem to be no reason for requiring a notice to an employer until such incapacity existed. To impose upon the employee the duty of giving notice forthwith after every accident to himself and before he had become incapacitated would place an unreasonable burden on the employee. Probably most accidents to employees result in such slight injury as to be incompensable. Requiring notice of these would also place upon the employer an unnecessary burden of investigation and care. Placing such a duty upon the employee would turn the attention of the employee to the subject of compensation for every trifling injury, and this might result in a tendency to malingering. Since subsequent incapacity may result from an exceedingly slight wrench, bruise, or scratch, the employee under the defendant's claim, in all cases, immediately upon the occurrence of the accident causing the slight injury, must give his employer notice, or else risk having his award reduced if incapacity subsequently results. And the employer must investigate each of these cases and follow up the employee until all possibility of resulting incapacity shall have passed. We think it unreasonable to conclude that the General Assembly intended a construction *466 such as this to be placed upon the word injury, and especially so in view of their use of injury in section 5360, General Statutes, as amended by section 8, c, 306, Public Acts 1921, which we hold means resulting incapacity, or, as we phrase it in Esposito v. Marlin Rockwell Corporation, supra [96 Conn. 414, 114 A. 92], compensable injury."
It also refers to In re Brown, 228 Mass. 31, 116 N.E. 897 (1917), where the Supreme Judicial Court of Massachusetts held that the employee's injury occurred not when he strained himself, but when the resulting rupture manifested itself at a later date.
In the Panchak case (15 N.J., at page 23) our Supreme Court goes on to say that the opinions in the cited cases avoid the bizarre result of disallowing a compensation claim because the workman failed to give notice before he even knew or had reason to know that he had a compensable injury; their inherent justice and good sense are evident. The court further held that consistent with the overall legislative purpose and the persuasive decisions elsewhere, it is fairly to be construed as requiring notice within the prescribed time after the compensable injury is manifested.
At page 24 of 15 N.J., at page 890, Justice Jacobs stated as follows:
"As was suggested in Bobertz v. Hillside Township, 125 N.J.L. 321, 323 (Sup. Ct. 1940), affirmed 126 N.J.L. 416 (E. & A. 1941), workmen rightly `do not regard every slip in the day's work as a matter to be publicly recorded.' The trivial daily bruises which do not result in incapacity or disability are not compensable. (Hercules Powder Co. v. Nieratko, supra, 113 N.J.L., at page 200) and any requirement that they be forthwith reported and investigated would place an undue burden on employees and employers alike."
At page 25 of 15 N.J., at page 891, the court held:
"In any event, the general language embodied in R.S. 34:15-17 had been construed throughout the states as requiring notice after the employee knew or had reason to know of a compensable injury."
Although the said case of Panchak v. Simmons Co., supra, construed R.S. 34:15-17, which provides for knowledge by or notice to the employer within a certain specified time of *467 the occurrence of the injury, the same construction should be placed on the statute under consideration, namely, N.J.S.A. 34:15-12(x), which provides for notice to the employer within 48 hours after the occurrence of the hernia, since the said case cites with approval two cases, in each of which the employee suffered a hernia. See Hines v. Norwalk Lock Co., supra, In re Brown, supra.
The statute in its present form (N.J.S.A. 34:15-12(x)[*]) is an amendment which became effective January 1, 1951. This amendment eliminated proof of the five requirements in hernia cases. These requirements, frequently referred to as the five points, consisted of proof of immediate descent, severe pain, prostration that compels immediate cessation of work, notice to the employer within 24 hours and the requirement of medical attention within the same period, and the said amendment provides only that where there is a traumatic hernia compensation will be allowed if notice thereof is given by the claimant to the employer within 48 hours after the occurrence of the hernia, but any Sunday, Saturday or holiday shall be excluded from the 48-hour period.
A reasonable construction of N.J.S.A. 34:15-12(x) is that where there is a traumatic hernia, compensation will be allowed if notice thereof is given by the claimant to the employer within 48 hours after the hernia became manifest; that is, within 48 hours of the time that  by the exercise of reasonable care and diligence  it is discoverable and apparent that a compensable injury has been sustained. In the case sub judice, the hernia became manifest, discoverable and apparent on May 28, 1954, when petitioner received a medical examination when he applied for a position with American Airlines. This was 21 days after the incident of May 7, 1954.
The reasons for said rule of construction are obvious: It relieves the employee of an unreasonable burden. It relieves the employer of the burden of investigating every *468 case of slight injury until all possibility of resulting incapacity shall have passed. Furthermore, the Workmen's Compensation Act does not contemplate the payment of damages for accidental injuries, no matter how painful. It is only the disability or loss of earning power which results from the injuries that calls for compensation. So when the act speaks of the occurrence of injury or the occurrence of the hernia, it refers to compensable injuries and these occur when disability appears  in other words, when the injury or hernia becomes manifest. See Clausen v. Minnesota Steel Co., supra.
It is true, as Dean Larson stated, that the great majority of the courts have been sufficiently impressed with the acute unfairness of a literal application of the language of these statutes to read in an implied condition suspending the running of the statutes until by reasonable care and diligence it is discoverable and apparent that a compensable injury has been sustained. However, that which is clearly implied from purpose which underlies a statute is as much a part of the law as that which is expressed. Ranney v. Instituto Pontificio Delle Maestre Filippini, 20 N.J. 189 (1955); Brandon v. Board of Commissioners of Town of Montclair, 124 N.J.L. 135, 143 (Sup. Ct. 1940); affirmed 125 N.J.L. 367 (E. & A. 1940). The Workmen's Compensation Act is remedial in nature and is given liberal construction to accomplish the desired legislative ends. Spindler v. Universal Chain Corp., 11 N.J. 34, 38 (1952); Sampson v. Thornton, 8 N.J. 415 (1952).
This construction of N.J.S.A. 34:15-12(x) apparently is not contrary to the intention of the Legislature. The real purpose and the precautions laid down by the Legislature in the section here involved, is to protect the employer from claims for hernia not actually caused by the accident. Langenohl v. Spearen, Preston & Burrows, 22 N.J. Super. 392, 396 (App. Div. 1952).
The deputy director stated that he thought it would be a fair statement to make that the hernia was caused by the incident and that there was a descent thereafter of a *469 slight character, so slight that the petitioner wasn't aware of it. The respondent did not introduce any evidence to deny the testimony of the petitioner in this respect. A review of the transcript leads me to the same conclusion as that reached by the deputy director, namely, that there was a causal relationship between the incident of May 7, 1954 and the hernia that was discovered as the result of a physical examination on May 28, 1954.
Therefore, it is my opinion that the petitioner complied with the statute when he gave notice to his employer within 48 hours of the time that the hernia was manifest and that the hernia that was discovered on May 28, 1954 was causally related to the incident of May 7, 1954.
NOTES
[*] Now N.J.S.A. 34:15-12, subd. c, par. 23.